# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-944V
Filed: August 7, 2019

* * * * * * * * * * * * * * * * * * * * * * * * *
YVONNE SIMPSON,

        Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

        Respondent.

* * * * * * * * * * * * * * * * * * * * * * * * *

Vaccine Act; Influenza (Flu) Vaccine; Guillain-Barre Syndrome (GBS); Special Processing Unit (SPU); Statute of Limitations § 16(b); Look-Back Provision; Motion to Dismiss

*Leah Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.
*Justine Walters*, U.S. Department of Justice, Washington, DC, for respondent.

## ORDER DENYING RESPONDENT'S MOTION TO DISMISS[1]

**Dorsey,** Chief Special Master:

On July 13, 2017, Yvonne Simpson ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et seq., (the "Vaccine Act" or "Program").[2] Petitioner alleges that she suffered Guillain-Barre Syndrome ("GBS") caused-in-fact by an influenza ("flu") vaccine she received on December 14, 2010. Petition at 1, 4. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] The undersigned intends to post this order on the United States Court of Federal Claims' website. **This means the order will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this published order contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

Before the undersigned is respondent's motion to dismiss on the grounds that petitioner's claim is time barred. For the reasons detailed below, respondent's motion is **DENIED**.

### I.     Relevant Procedural History

In support of her claim, petitioner filed medical records (Exs. 1-11, 13-15) and her own affidavit (Ex. 12). (ECF Nos. 8, 11). Deadlines for respondent to report his position in the case were set following the September 11, 2017 initial status conference. Orders, ECF Nos. 10, 15, 17; *see also* Docket Entries dated Oct. 27, 2017, Apr. 9, 2018, and June 1, 2018.

Respondent filed a Rule 4(c) Report and a Motion to Dismiss on June 15, 2018. Respondent's Rule 4(c) Report ("Res. Report") (ECF No. 21); Respondent's Motion to Dismiss ("Res. Mot.") (ECF No. 22). Respondent's motion to dismiss relies upon his Rule 4 argument that petitioner's claim is barred by the Vaccine Act's statute of limitations. Res. Mot. at 1.

On September 5, 2018, petitioner filed a response following two unopposed extensions of time. Petitioner's Response to Respondent's Motion ("Pet. Resp.") (ECF No. 26). Respondent's reply was filed on April 4, 2019 following four unopposed extensions of time. Respondent's Reply ("Res. Reply") (ECF No. 31).

The matter is now ripe for adjudication.

### II.    Relevant Factual Allegations

On July 13, 2017, petitioner filed a "Petition for Vaccine Compensation – Flu/GBS" seeking compensation for injuries resulting from adverse effects, including GBS, that were "caused in fact by the influenza vaccination...." Petition at 1, ¶ 13. Petitioner alleges that she received a flu vaccination on December 14, 2010 (Petition at ¶ 1; Ex. 1 at 1) and that she developed numbness and tingling in her extremities on or about January 30, 2011 or February 1, 2011. Petition at ¶ 2 (alleging petitioner developed numbness and tingling on February 1, 2011 and stating that petitioner presented with a four-day history of progressive paresthesia on February 3, 2011). Petitioner underwent an EMG study in 2016 and was reported to have a history of "apparent Guillain-Barre syndrome and later had a recurrent bout suggestive of CIDP [chronic inflammatory demyelinating polyneuropathy]." Petition at ¶ 12.

### III.   Legal Standard

The statutory deadlines for filing petitions under the Vaccine Act are set forth at § 16. Under the Vaccine Act, a person "who has sustained a vaccine-related injury" must file a claim within 36 months of the onset of the symptoms of the injury. *Id.* at § 16(a)(2). An exception applies, extending the period when a petition may be filed:

> If at any time the Vaccine Injury Table is revised and the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the Program, or to *significantly increase the likelihood of obtaining compensation*, such person may . . . file a petition for such compensation not later than 2 years after the effective date of the revision . . . if . . . the vaccine-related injury occurred no more than 8 years before the date of the revision of the table.

§ 16(b) ("look-back provision") (emphasis added).

When determining whether a petition is timely filed, it is permissible to rely on allegations as set forth in the petition. *Reed v. Sec'y of Health & Human Servs.*, No. 05-757V, 2005 WL 6120643, at *3 (Fed. Cl. Spec. Mstr. Jul. 26, 2005) (finding a petition was filed after the expiration of the statute of limitations by relying on the allegations as set forth in the petition), *mot. for rev. denied*, 69 Fed. Cl. 437 (2005); *Tucker v. Sec'y of Health & Human Servs.,* No. 03-346V, 2004 WL 950012, at *1, 3-4 (Fed. Cl. Spec. Mstr. Apr 15, 2004) (dismissing a petition as untimely filed even though the issue of vaccine causation was deferred).

### IV.   Parties' Arguments

#### A. Respondent's Position

Respondent asserts that petitioner's claim, which is based on an injury that occurred over six years before the petition was filed, is time barred. Res. Report at 7, 10. Respondent's position is grounded in the argument that the look-back provision of § 16(b) does not apply to causation-in-fact claims. *Id.*

Respondent argues that "a mere allegation of flu/GBS is insufficient to trigger the look-back provision" where the underlying facts do not meet the criteria for a Table claim. Res. Reply at 3-4. Respondent contends that the onset of petitioner's injury exceeds the timeframe for a Flu-GBS claim under the revised Table. *Id.* at 8 (referencing 42 C.F.R. § 100.3(a)(XIV)(D) and assuming a 47-day onset). Concluding that petitioner's claim cannot proceed as a Table Injury, respondent posits that the § 16(b) exception to three-year statute of limitations is inapplicable. *Id.*

Respondent insists that the likelihood of petitioner receiving compensation in her causation-in-fact claim did not significantly increase after the March 2017 Table revision. Res. Reply at 3 (referencing § 16(b)). Respondent argues that petitioner was eligible to make a causation-in-fact claim prior to the March 21, 2017 Table revision, and this revision does not serve as "'proof' of a causal relationship between GBS and the flu vaccine." *Id.* at 4-5.

Respondent also further asserts that petitioner did not suffer from GBS. Res. Reply at 7. Specifically, respondent explains that, although several early records reference petitioner's condition as GBS, later records—including those of petitioner's current neurologist—suggest petitioner actually had chronic inflammatory demyelinating

3

polyneuropathy ("CIDP"), diabetic polyneuropathy, and/or carpal tunnel syndrome.  *Id*.  Respondent suggests that the March 2017 Table revision *decreased* petitioner's likelihood of success because it added CIDP to the exclusionary criteria for the diagnosis of GBS under the Qualifications and Aids to Interpretation.  *Id*. at 8 (citing 42 C.F.R. § 100.3(c)(15)(iv)).

### B.  Petitioner's Response

Petitioner argues that the March 2017 Table revision formalized the Secretary's recognition of the causal nexus between flu vaccines and GBS.  Pet. Resp. at 9.  Petitioner contends that "anytime the government recognizes that the scientific and medical evidence is sufficient to warrant [adding an injury to the] Table," it significantly increases a petitioner's likelihood of obtaining compensation for that injury, thereby invoking the § 16(b) look-back provision.  *Id*. at 8.

Petitioner emphasizes that, prior to the March 21, 2017 table revision, respondent consistently contested that the flu vaccine caused GBS and ultimately agreed to settle those cases on the basis of litigative risk.  *Id*. at 8-9.  She further contends that the addition of a flu-GBS claim to the Table constituted a reversal of respondent's previous position and an acknowledgment that GBS is associated with, and can be caused by, the flu vaccine.  *Id*. at 9.  Therefore, petitioner notes that it is "logical" that the revision significantly increased her likelihood of obtaining compensation based on a causation-in-fact claim. [3]  *Id*.

Petitioner further responds that any determination that her claim is off-table is premature.  Pet. Resp. at 6-8.  Petitioner raises a question as to the onset date of her injury and posits that, to the extent that her claim presents a factual dispute, the undersigned is "incapable of making such a finding on summary judgment or dismissal proceedings."  *Id.*

### V.    Discussion

Petitioner alleges that she suffered GBS that was caused-in-fact by the flu vaccine she received on December 14, 2010.  Petition at 1, 4.  To the extent that the parties raise Table injury related issues including onset and exclusionary criteria, the undersigned deems them irrelevant to whether petitioner may proceed with her causation-in-fact claim as alleged.[4]  As explained above, relying on allegations set forth

---

[3] In addition to arguing that respondent's motion to dismiss should be denied, petitioner requests that the undersigned make an affirmative finding as to whether petitioner has a reasonable basis to proceed in retaining the neurological consultant referenced in her response.  Pet. Resp. at 10.  Petitioner's request for a reasonable basis determination is premature at this time.

[4] As noted by respondent, CIDP is listed as an exclusionary criteria for a GBS claim in the Table.  Res. Resp. at 8 (citing 42 C.F.R. § 100.3(c)(15)(iv)).  This does not preclude petitioner from prevailing on a causation-in-fact claim.  *See, e.g., Soos v. Sec'y of Health & Human Servs.*, No. 16-626V, 2019 WL 3074013, at *1 (Fed. Cl. Spec. Mstr. June 17, 2019) (respondent filed a stipulation providing that a decision should be entered awarding compensation to petitioner for CIDP from flu vaccine*); Lewis v. Sec'y of Health & Human Servs.*, No. 17-224V, 2019 WL 1749396, at *1 (Fed. Cl. Spec. Mstr. Mar. 18,

in the petition is permissible when determining whether it was timely filed.  *Reed*, 2005 WL 6120643, at *3.

Petitioner's petition was filed over six years after onset of her alleged GBS injury, and thus under the straightforward application of § 16(a)(2) is time-barred.  However, on March 21, 2017, the Vaccine Injury Table was revised to include the injury of GBS following a flu vaccine.[5]  42 C.F.R. § 100.3(a)(XIV)(D).  Petitioner's claim was filed within two years of the effective date of the revision and within eight years from the onset of injury in compliance with the § 16(b) look-back provision.

Thus, the issue ripe for resolution by the undersigned is whether the § 16(b) look-back triggered by the March 21, 2017 Table revision would make petitioner's off-table claim timely filed.  The undersigned begins with a review of the applicable statute.

### A. Statutory Interpretation

In a statutory construction analysis, the first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  *Skinner-Smith v. Sec'y of Health & Human Servs.*, 141 Fed. Cl. 348, 361 (2018) (internal citations omitted).  The initial inquiry into the statutory text ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"  *Id.* at 362; *Hellebrand v. Sec'y of Health & Human Servs.*, 999 F.2d 1565, 1569 (Fed. Cir. 1993) (quoting *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 788 (Fed. Cir. 1988) ("It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further."), *cert. denied*, 488 U.S. 943); *see also e.g.*, *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (analyzing the ordinary meaning of "filed" in the Vaccine Act).

#### i. Ambiguity

Section 16(b) has been treated as an exception with two applications.  *Gorski v. Sec'y of Health & Human Servs.*, No. 97-156V, 1997 WL 739497, at *4 (Fed. Cl. Spec. Mstr. Nov. 13, 1997).  The first being when a claim is filed by "an individual who was not, before such revision, eligible to seek compensation under the Program . . . ".

---

2019) (awarding compensation for injuries resulting from a flu vaccine including GBS and CIDP); *Colapietro v. Sec'y of Health & Human Servs.,* No. 17-785V, 2019 WL 1528299, at *1 (Fed. Cl. Spec. Mstr. Mar. 14, 2019) (awarding compensation for CIDP resulting from a flu vaccine); *Douglass v. Sec'y of Health & Human Servs.*, No. 17-175V, 2019 WL 1556713, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 2019) (awarding compensation for injuries resulting from a flu vaccine including GBS and CIDP); *Wyllis v. Sec'y of Health & Human Servs.*, No. 11-764V, 2018 WL 6888930, at *1 (Fed. Cl. Spec. Mstr. Dec. 3, 2018) (awarding compensation for injuries resulting from a flu vaccine including GBS and CIDP); *Marsh v. Sec'y of Health & Human Servs.*, No. 16-1532V, 2018 WL 5784484, at *1 (Fed. Cl. Spec. Mstr. Sept. 20, 2018) (awarding compensation for CIDP resulting from a flu vaccine).

[5] The flu vaccine was covered under the Program prior to the Table revision, and thus individuals injured from a flu vaccination were eligible to seek compensation for causation in fact claims.  *See* 42 C.F.R. § 100.3(c).

*Gorski,* 1997 WL 739497, at *4 (quoting §16(b)).  This application of the provision has been held to apply to when a new vaccine is added to the table thereby creating eligibility for Program compensation.  *Id.*

The second application of the look-back provision involves when a claim is filed following a Table revision that "*significantly increase[s] the likelihood of obtaining compensation*."  *Gorski,* 1997 WL 739497, at *4 (quoting §16(b)).  This application of the provision has been held to apply when a new vaccine injury is added to the Table. *Id.*  It is this application of the look-back provision that petitioner here seeks the benefit of.

The phrase "significantly increase the likelihood of obtaining compensation" is not defined in the Vaccine Act.  §16(b); *see also* § 33 (general provisions of the Vaccine Act that defines certain words).  Although nonbinding, special masters have provided various interpretations of the § 16(b) look-back provision.  *See, e.g.*, *K.G. v. Sec'y of Health & Human Servs.,* No. 18-120V, 2018 WL 5795834, at *12 (Fed. Cl. Spec. Mstr. Aug. 17, 2018); *Muchnick v. Sec'y of Health & Human Servs.*, No. 97-89V, 1998 WL 1012801, at *7 (Fed. Cl. Spec. Mstr. July 15, 1998); *Gorski,* 1997 WL 739497, at *7-8.

The first Program cases that discussed the look-back provision followed the March 10, 1995 Table revision which added "chronic arthritis" as a Table injury for the measles-mumps-rubella ("MMR") vaccination.  *Gorski,* 1997 WL 739497; *Muchnick*, 1998 WL 1012801.  In the first of these cases, *Gorski*, the special master described the look-back provision as "confusing on its face," and—admitting it was an unexplored issue in the program—provided an interpretation of the statute as it pertained to "chronic arthritis."  *Gorski,* 1997 WL 739497, at *2-3.

In *Gorski*, the special master ruled that the petitioner's injury did not meet the newly-established chronic arthritis Table criteria because the medical documentation requirements were not met.[6]  *Gorski*, 1997 WL 739497 at *5.  With regard to petitioner's causation-in-fact claim, the special master held that the Table revision did not significantly increase petitioner's likelihood of obtaining compensation.  *Id.*  The special master reasoned that the addition of chronic arthritis to the table did not "add[] *credence* to the *general theory* that the rubella vaccine can cause chronic arthritis."  *Id.*  The special master added that, in determining causation-in-fact, the alleged injury's similarity to a Table injury is not relevant.  *Id.*  The same special master reached an identical conclusion in *Muchnick* following the determination that petitioner's alleged injury did not meet the revised Table criteria.  *Muchnick*, 1998 WL 1012801, at *7.

More recent decisions since *Gorski* and *Muchnick* review the § 16(b) look-back provision more generally.  In *K.G.*, a GBS case following the March 2017 Table revision, the special master determined that the look-back provision did not apply, reasoning that petitioner's alleged GBS on-Table injury was "wholly inconsistent with GBS", and that a

---

[6] The table definition for chronic arthritis requires "[m]edical documentation, recorded within 30 days after the onset, of objective signs of acute arthritis (joint swelling) that occurred within 42 days after a [MMR] vaccination…."  42 C.F.R. 100.3(b)(6)(A).

four-month onset was "too long outside the 42-day window to successfully establish a Table injury."  *K.G.*, 2018 WL 5795834, at *12.  In another GBS case following the March 2017 Table revision, *Ling,* the special master suggested that Table revisions might demonstrate a significant increase in a petitioner's likelihood of obtaining compensation.  *Ling v. Sec'y of Health & Human Servs.*, No. 18-858V, 2019 WL 2606774, at *6 (Fed. Cl. Spec. Mstr. May 21, 2019).

Ambiguity of the language of the look-back provision having been established in previous case law, the undersigned next turns to reviewing the legislative intent.

### ii. Congressional Intent

While it is true that the statute of limitations provision of the Vaccine Act should be construed in favor of the sovereign and not enlarged beyond what the language requires (*O'Connell v. Sec'y of Health & Human Servs.*, 63 Fed. Cl. 49, 57 (2004)), a broad interpretation of § 16(b) is in harmony with the overall purpose of the Vaccine Act.  A review of the Vaccine Act's legislative history demonstrates that it is consistent with Congressional intent to interpret the Act as permitting petitioner's claim here to proceed.  The Vaccine Act is a remedial statute.  *Cloer v. Sec'y of Health & Human Servs.,* 675 F.3d 1358, 1362 (Fed. Cir. 2012) (*en banc*), *aff'd sub nom. Sebelius v. Cloer,* 569 U.S. 369 (2013).  When Congress enacted the Vaccine Act its intent was to create a program that resulted in awards being made "quickly, easily, and with certainty and generosity."  H.R.Rep. No. 99–908, *reprinted* in 1986 U.S.C.C.A.N. 6287, 6344.

As its structure reflects, the Vaccine Program was "intended to be expeditious and fair" and "to compensate persons with recognized vaccine injuries without requiring the difficult individual determinations of causation of injury."  *House Report* at 12–13, *reprinted in* 1986 U.S.C.C.A.N. at 6353–54 ("The Committee anticipates that the speed of the compensation program, the low transaction costs of the system, the no-fault nature of the required findings, and the relative certainty and generosity of the system's awards will divert a significant number of potential plaintiffs from litigation.").  Because it is a broad remedial statute, the Vaccine Act and its provisions are to be construed in a manner that effectuates that underlying spirit and purpose.  *Cloer,* 675 F.3d at 1362; *see also Schultz v. Sec'y of Health & Human Servs.*, No. 12-234V, 2013 WL 5314595, at *4–5 (Fed. Cl. Spec. Mstr. Aug. 30, 2013) (interpreting the Vaccine Act broadly to allow for a petition to include alleged injuries to a child in utero in addition to alleged injuries to the mother); *Flowers v. Sec'y of Health & Human Servs.,* 49 F.3d 1558, 1562 (Fed. Cir. 1995); *Zatuchni v. Sec'y of Health & Human Servs.,* 73 Fed. Cl. 451, 455 (2006), *aff'd,* 516 F.3d 1312 (Fed. Cir. 2008).

The undersigned interprets the look-back provision not in isolation, but in the broader context of § 16.  The first group of claimants covered by § 16(b), those who were previously "not . . . eligible to seek compensation," is narrowly, precisely defined.[7]

---

[7] When a new vaccine is added to the table, new petitioners who were "not, before such revision, eligible to seek compensation under the Program," are able to file petitions.  *See* § 16(b); *Miller v. Sec'y of Health & Human Servs.*, No. 07-530V, 2008 WL 458727, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2008).

Congress could have used similarly definite language to restrict the second group of claimants, those whose likelihood of compensation was "significantly increase[d]," but declined to do so. No language in § 16(b) excludes causation-in-fact claims – in fact, no part of § 16 differentiates between table injuries and causation-in-fact injuries, further suggesting that Congress did not intend statute of limitations issues to turn on this distinction. Likewise, the undersigned does not find it reasonable to read such a restriction into the statute.

### B. The Table Revision Significantly Increased Petitioner's Likelihood of Obtaining Compensation

Petitioner has not alleged a table claim, and therefore must satisfy the three prongs set forth by the Federal Circuit in the *Althen* decision: (1) a medical theory causally connecting the vaccination to the injury (i.e., that the vaccine "can cause" the injury); (2) a logical sequence of cause and effect showing the vaccination was the reason for the injury (i.e., that in this case the vaccine "did cause" the injury); and (3) a proximate temporal relationship between the vaccination and the injury. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1279 (Fed. Cir. 2005).

Prior to the March 2017 Table change, GBS claims often required expert opinion to establish a causal connection between the flu vaccine and GBS. *See, e.g.*, *Stewart v. Sec'y of Health & Human Servs.*, No. 06-777V, 2011 WL 3241585, at *16 (Fed. Cl. Spec. Mstr. July 8, 2011) (relying in part on petitioner's expert neuroimmunologist to satisfy prong one of the *Althen* test). In contrast, the addition of GBS to the Table presumptively establishes that the flu vaccine causes GBS, relieving the need for petitioner to show or put forth a medical theory causally connecting the flu vaccine to her GBS. Such presumption of the causal association between vaccine and injury has been held to support the establishment of the theory required by the first *Althen* prong. *Doe 21 v. Sec'y of Health & Human Servs.*, 88 Fed. Cl. 178 (2009) (holding that recognition of a link between vaccine and injury on the Vaccine Injury Table supports petitioner's burden under *Althen* Prong One), *rev'd on other grounds sub nom. Paterek v. Sec'y of Health & Human Servs.*, 527 Fed. Appx. 875 (Fed. Cir. 2013); *Chinea v. Sec'y of Health & Human Servs.*, No. 15-095V, 2019 WL 1873322, at *29 (Fed. Cl. Spec. Mstr. Mar. 15, 2019) (citing the inclusion of GBS to the Vaccine Table as evidence that the flu vaccination can cause GBS, thus satisfying prong I of the *Althen* test).

Petitioner's asserted 47-day onset is just five days outside the time fame set forth in the Table and within the range special masters have found to be reasonable in GBS claims. *See, e.g.*, *Barone v. Sec'y of Health & Human Servs*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (finding eight weeks is the longest reasonable timeframe for a flu vaccine/GBS injury). This situation differs from the claims in *Gorski, Muchnick,* and *K.G.,* which included allegations and facts that were not close to the Table criteria. *Gorski*, 1997 WL 739497 (requisite medical evidence was recorded several months beyond the Table criterion of 30 days after onset); *Muchnick*, 1998 WL 1012801 (petitioner's injury was excluded from the Table); *K.G.*, 2018 WL 5795834 (a four-month onset was "too long" outside the 42-day Table range, petitioner's

injury was inconsistent with the Table injury). Distinguishing from the facts in previous look-back cases, here petitioner's alleged injury is consistent with GBS.

Although *Gorski* and *Muchnick* suggest that the "significantly increases" language of the look-back provision could extend the statute of limitations following an addition of a new injury to the Table, they did not identify when doing so would be appropriate. Unlike the special master in those cases, the undersigned is benefitted by accumulated Program case law including *Althen* which provides a causation-in-fact framework making assessing the "likelihood of a claim" a more discernable task. Given the volume of causation-in-fact flu-GBS cases compensated in the program, followed by the March 2017 Table revision adding GBS to the Table, the undersigned deems that petitioner's claim presents an appropriate situation to apply the "significantly increases" language of the look-back provision. The undersigned holds that under the factual circumstances of the present case, the March 2017 Table revision *does* significantly increase petitioner's likelihood of obtaining compensation for her specific causation-in-fact claim.

Thus, having reviewed the petition, the parties' respective filings, the Vaccine Act, and the relevant case law and legislative history, the undersigned holds that § 16(b) applies to petitioner's non-table GBS claim as alleged in the petition.

## VI. Conclusion

For the reasons set forth above, respondent's Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

9